IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KELLY STACY, ) | |
| Plaintiff, ) | |
| v. ) | No. 3:16-CV-464-BF |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Kelly Stacy ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, pursuant to Title 42, United States Code, Section 405(g). Pl.'s Br. 1, ECF No. 20. For the following reasons, the final decision of the Commissioner is REVERSED and REMANDED.

## BACKGROUND

Plaintiff alleges that she is disabled due to a variety of ailments, including diabetes, anxiety, depression, tendonitis, and problems with her back. Tr. 45-51, ECF No. 12-3. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on July 30, 2014 in Dallas, Texas before ALJ Keith Allred. Tr. 38, ECF No. 12-3. Also present at the hearing was Vocational Expert ("VE") Mr. Hildray. Tr. 38, ECF No. 12-3. At the time of the July 30, 2014 hearing, Plaintiff was 50 years old. Tr. 57, ECF No. 12-3. Plaintiff has past work experience as a shift leader at Jack in the Box and a receiving supervisor at OfficeMax. Tr. 52, ECF No. 12-3. Plaintiff attended high school through the ninth grade. Tr. 57, ECF No. 12-3. Plaintiff has not engaged in substantial gainful activity since September 14, 2004. Tr. 22, ECF No. 12-3.

On September 19, 2014, the ALJ issued a decision finding that Plaintiff has not been under a disability from September 14, 2004 through the date of his decision. Tr. 22 & 31, ECF No. 12-3. The ALJ determined that Plaintiff had the following severe impairments: minimal degenerative disc disease, obesity, diabetes mellitus, affective disorder, major depressive disorder, and anxiety. Tr. 23, ECF No. 12-3. The ALJ also determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24, ECF No. 12-3. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Tr. 26, ECF No. 12-3. The ALJ found that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently, and that she was able to sit, stand, and walk for 6 hours each in an eight hour workday with normal rest breaks. Tr. 26, ECF No. 12-3. The ALJ also found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, bend, squat, kneel, and crouch but should not crawl or climb ladders, ropes, or scaffolds. Tr. 26, ECF No. 12-3. The ALJ further found that Plaintiff could perform detailed, but non-complex tasks and could understand detailed, but not complex instructions, and that she could interact occasionally with supervisors, coworkers, and the general public. Tr. 26, ECF No. 12-3.

With respect to Plaintiff's minimal degenerative disc disease, obesity, and diabetes mellitus, the ALJ stated that the evidence failed to support Plaintiff's allegations of disabling limitations. Tr. 27, ECF No. 12-3. The ALJ noted that the evidence did not show any worsening of Plaintiff's alleged conditions during the period in question, and that the stable findings and infrequent treatment did not support Plaintiff's allegation of disability. Tr. 27, ECF No. 12-3. The ALJ also stated that the combination of Plaintiff's lack of ongoing mental health treatment and the consultative

2

psychological examination performed by Linda S. Ludden, Ed.D., do not support a claim of disabling mental limitation. Tr. 27, ECF No. 12-3. Furthermore, the ALJ stated that he gave little weight to Plaintiff's treating podiatrist, Dr. Robert Angelier's opinions that Plaintiff was not able to stand on concrete for more than two hours and that her expected return date for work was unknown, because the opinions were conclusory and Dr. Angelier did not explain what evidence he relied on in forming these opinions. Tr. 27-28, ECF No. 12-3. The ALJ also stated that Dr. Angelier's opinions were not supported by other evidence in the record. Tr. 28, ECF No. 12-3.

In considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the tasks of a modified range of light work such as a photo machine operator, an assembler, and a cleaner, occupations that the VE testified at Plaintiff's hearing that she could perform, despite her limitations. Tr. 29-30, ECF No. 12-3. Plaintiff appealed the ALJ's decision to the Appeals Council. Tr. 1, ECF No. 12-3. On December 21, 2015, the Appeals Council affirmed the ALJ's decision. Tr. 1, ECF No. 12-3. Plaintiff subsequently filed this action in the Northern District of Texas on February 18, 2016. Compl., ECF No. 1.

## **LEGAL STANDARDS**

A claimant must prove that she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. § 404.1520(b)-(f)). The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standards were utilized. *Greenspan*, 38 F.3d at 236 (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a

conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues *de novo*, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Id.* (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)). Further, "[t]he ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-44-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure.").

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by not finding that she has the additional severe impairments of tarsal tunnel syndrome/plantar fasciitis, neuropathy, and tendonitis to her hands. Pl.'s Br. 3, ECF No. 20. Plaintiff argues that there is ample evidence in the record of her tarsal tunnel syndrome/plantar fasciitis, nueropathy, and tendonitis. Pl.'s Br. 3, ECF No. 20. In

support of her argument, Plaintiff refers to her testimony, her use of Gabapentin, and a Third-Party Function Report completed by her friend, Samantha Espinoza. Pl.'s Br. 4, ECF No. 20. Plaintiff reported in a Disability Report dated May 28, 2013 that she is taking Gabapentin for pain and tingling in her feet and that she experienced fatigue and headaches from taking this medicine. Tr. 254 & 265, ECF No. 12-7. In the Third-Party Function Report, Ms. Espinoza reported that Plaintiff has problems with her feet that affect her ability to sit or stand for long periods. Tr. 241, ECF No. 12-7. Plaintiff argues that had the ALJ properly considered all of Plaintiff's impairments as indicated by the record, the ALJ would likely have found that Plaintiff was significantly more limited. Pl.'s Br. 4, ECF No. 20.

The Commissioner argues in her response that, in the absence of clinical findings showing functional limitations, the Agency does not have the discretion to find disability based solely on Plaintiff's reported symptoms. Resp. 5, ECF No. 21. The Commissioner also argues that it is Plaintiff's burden to show that she has a severe impairment. Resp. 5, ECF No. 21. Moreover, the Commissioner argues that the Fifth Circuit has held that a diagnosis of an impairment, the prescribing of a medication, or the mentioning of a condition in the medical record does not establish a disabling impairment or a significant impact on functional capacity. Resp. 6-7, ECF No. 21. The Commissioner argues that the ALJ considered Plaintiff's contention that she was unable to work in part due to her plantar fasciitis, diabetes, and tendonitis, as well as her complaints of pain and numbness in her feet, but ultimately determined that the evidence failed to support her allegations of disabling limitations. Resp. 7, ECF No. 21.

The Commissioner points out that the ALJ also considered Plaintiff's relatively infrequent trips to the doctor, and that while Plaintiff underwent surgery for her feet, nothing in the record

6

suggests that her surgery was not successful. Resp. 8, ECF No. 21. The Commissioner also points out that, while Plaintiff refers to Dr. Angelier's opinion that Plaintiff was not able to stand on concrete for longer than 2 hours and that her expected return date to work was unknown, the ALJ stated that he gave Dr. Angelier's opinion little weight because it was conclusory and Dr. Angelier did not explain what evidence he relied on in making these opinions. Resp. 8, ECF No. 21. The Commissioner argues that Plaintiff cannot establish disability by pointing to a medical diagnosis and asserting that it impacts her ability to work, but must meet her burden of demonstrating functional impairments that significantly limit her ability to perform basic work activities. Resp. 9, ECF No. 21.

As the Commissioner points out, the ALJ stated that he gave Plaintiff's treating podiatrist, Dr. Angelier's opinions little weight because it was conclusory and Dr. Angelier did not explain what evidence he relied on in forming his opinions. TR. 27-28, ECF No. 12-3. The ALJ also stated that he gave substantial, but reduced weight to the opinions of state agency medical consultants Maryam Saif, M.D. and San-San Yu, M.D. who stated that Plaintiff was able to perform a wide range of medium work with some additional postural limitations. Tr. 28, ECF No. 12-3. In *Newton v. Apfel*, the Fifth Circuit stated the following:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]. Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e). . . . This court [] holds that an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist. The ALJ failed

to perform this analysis, which should be conducted on remand. *Newton v. Apfel*, 209 F.3d 448, 453-56 (5th Cir. 2000).

Dr. Angelier's Chart No. 1144781 indicates that Plaintiff was seen on September 14, 2004 for a follow-up injection on her left heel. Tr. 341, ECF No. 12-8. Dr. Angelier also stated that Plaintiff was not able to stand for longer than two hours due to tarsal tunnel syndrome and that she was developing plantar fasciitis at that time. Tr. 340-41, ECF No. 12-8. The ALJ noted in his decision that Dr. Angelier operated on Plaintiff's foot on March 17, 2004. Tr. 27, ECF No. 12-3; Tr. 294-02, ECF No. 12-8. While the ALJ discussed Dr. Mahir Patel's March 9, 2013 consultative examination where he found that Plaintiff had moderate limitations with sitting and standing due to back pain, and that Plaintiff had reduced sensation in her bilateral feet, this one time examination of a consultative examiner does not reliably controvert the opinion of Plaintiff's treating specialist who performed surgery and repeated injections to Plaintiff's feet. Tr. 294-02, 334 & 341, ECF No. 12-8; Tr. 27, ECF No. 12-3. Therefore, pursuant to *Newton*, the ALJ was required to consider each of the Section 404.1527(c)[1] factors prior to rejecting Dr. Angelier's opinion. *See Wilder*, 2014 WL

---

1. 20 C.F.R. § 404.1527(c) states the following:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
    (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
    (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
        (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
        (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about

2931884, at *5 ("[B]ecause Drs. Post and Herman are non-examining physicians . . . their opinions provide no basis to bypass the requisite detailed analysis. Although Dr. Rumalla examined Plaintiff, his opinions do not contradict the RFC assessments of Dr. Ruby as already discussed. Under the facts of this case, the ALJ was required to provide a detailed analysis of the six factors."); *Gittens v. Astrue*, 3:04-CV-2363-L, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) ("The court [] finds that the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527[(c).]"). Therefore, the Court concludes that the ALJ's decision is not supported by substantial evidence. *See Wilder*, 2014 WL 2931884, at *6 ("On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician instead of the opinions of the nonexamining physician. There is also a realistic possibility that the ALJ would have sought clarification or additional evidence as contemplated by 20 C.F.R. § 404.1512(e).").

---

your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.
    (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
    (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
    (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.

## CONCLUSION

For the reasons stated above, the final decision of the Commissioner is REVERSED and REMANDED for proceedings consistent with this opinion.

SO ORDERED, this 6 day of December, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE